FILED
2010 Jan-06 AM 09:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DANIELS CAPITAL CORPORATION,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:09-CV-01654-RDP** |
| | } | |
| **MICHAEL W. BLAKE,** | } | |
| | } | |
| **Defendant.** | } | |

**MEMORANDUM OPINION**

On October 23, 2009, Plaintiff Daniels Capital Corporation filed an Application to Court for Default Judgment with Leave to Prove Damages (Doc. # 7) against Defendant Michael W. Blake based upon Defendant's failure to appear or otherwise respond to the allegations of the complaint. On October 27, 2009, the court granted Default Judgment in favor of Plaintiff and set the matter of damages for a hearing. On December 8, 2009, the court conducted an evidentiary hearing on the issue of Plaintiff Daniels Capital Corporation's damages.

Daniels Capital Corporation ("Plaintiff" or "Daniels") advances funds to attorneys who perform court-appointed indigent defense work around the nation. Funds are advanced by Daniels to the attorney for accounts receivable in the form of a fee declaration from federal and state courts. An attorney will initially submit to Daniels an "Assignment Schedule" listing pertinent information on each case and the amount to be billed and collected from the governmental body for the attorney's services. Daniels will then advance a percentage of the fee declaration. Once the voucher is paid by the governmental body, Daniels will distribute to the attorney the reserve minus the agreed fees owed Daniels.

Defendant Blake ("Defendant" or "Blake") approached Daniels regarding its services for advancing funds for appointments in the State of West Virginia. He sought advanced funding from Daniels on numerous cases on which he had been appointed counsel by the state. (Tr. 2-3). On May 14, 2004, Blake executed an agreement with Daniels pursuant to which he sold certain accounts to Daniels in exchange for advanced funding from Daniels. (Tr. 3, Ex. 1). The agreement provides that, in the event of a breach, Daniels is entitled to collect not only the amount initially funded, but also the maximum fees (pursuant to a schedule) and the lost income that Daniels would have earned had Blake not breached the agreement. (Ex. 1). The agreement further provides that Daniels shall be entitled to recover from Blake reasonable attorneys' fees, court costs and other expenses incurred in enforcing the terms of the agreement. (Tr. 7, Ex. 1). In the event of non-payment, Daniels contracts with attorneys to make collection efforts and file suit if necessary. Daniels pays its attorneys one-third of the amount collected on a contingency-fee basis. (Tr. 9). This percentage is within the range of reasonableness and customary attorneys' fees in these types of cases. (Doc. # 11, Ex. 1).

The evidence at the hearing indicated that Blake has been advanced money and successfully arranged assignment of payments in other instances. However, Daniels presented evidence that in fifty-three (53) cases on which Blake had been appointed counsel (and on which he sought and received advanced funding from Daniels) Blake had apparently not submitted the necessary paperwork to receive a fee. These fees would have been payable to Daniels because, in exchange for the advanced funding, the attorney assigns the payments he was to receive from the court for the appointed case. (Tr. 3-5, Ex. 2). The funds advanced by Daniels were a percentage of the total payment Blake was to have received from the state. (Tr. 3). Daniels charges a fee for providing its

service that is based upon the number of days that the advance is outstanding (*i.e.,* the number of days that have passed between the initial advance to the attorney and receipt of the payment on the account from the state). (Tr. 4-6).

After making unsuccessful efforts to collect these amounts from Blake, Daniels initiated this action. (Tr. 7-8). Daniels' complaint seeks monetary damages for alleged breach of contract, breach of fiduciary duty, unjust enrichment, fraud and suppression, specific performance and for equitable relief. (Doc. # 1).

Daniels has proven that Blake applied for and accepted advances in fifty-three (53) cases, but breached the agreement by failing to take steps necessary to assign to Daniels the payments from the State of West Virginia. Of the fifty-three cases on which Daniels advanced funds to Blake and of which it has not received payments from the State of West Virginia, the face amount advanced to Blake was $54,321.68. The fees on this amount through November 20, 2009 total $49,504.81. (Ex. 2).

Daniels also claims that it suffered lost income on the amounts owed by Blake through November 20, 2009 (*i.e.*, $53,202.70). (Ex. 3). However, while the recovery of loss of income is clearly a contractual remedy available to Daniels under its contract with Blake, at the hearing Daniels was unable to factually prove it is entitled to this remedy. For example, Daniels did not establish that all of its capital was fully employed during the time period that the amounts advanced to Blake were outstanding such that it missed an opportunity to re-advance those funds (Tr. 12-14) or that it otherwise actually suffered any other lost income as a specific result of Blake's failure to properly assign the payments to Daniels.

In addition to its breach of contract claim, Daniels asserts that Blake committed fraud against it. Daniels' fraud claim is based on the fact when Blake sought each new advance funding he represented that he had completed and filed the appropriate paperwork with the State of West Virginia on prior assigned cases such that Daniels would receive the appropriate payment from the state. Daniels alleges that Blake: (1) knew at the time he sought additional funds that he had not done so; (2) misrepresented that he had done so on all cases; and (3) suppressed the fact that he had not done so. Daniels seeks three times the amount of compensatory damages as a punitive damage award. (Tr. 8-10, 11-12, 14-15). Due to the dearth of evidence regarding Blake's state of mind and intent, and in light of the evidence that Blake had actually arranged for payments to Daniels or other matters (and therefore may have done nothing more than failed to file the appropriate forms with the West Virginia courts) the court does not find that an award of punitive damages is appropriate.

Based upon the evidentiary record before the court, Daniels has established that it is due to recover from Blake the following damages:

1. the face value of the amounts advanced to Blake: $54,321.68;

2. the agreed-upon associated fees: $49,504.81;

3. a reasonable attorneys' fee of one-third of the amount recovered ($54,321.68 + $49,504.81 = $103,826.49 ÷ 3 = $34,608.83): $34,608.83; and

4. its filing fee: $350.00

for a total recovery of $138,785.32.

A final default judgment in favor of Daniels and against Blake that is consistent with this opinion will be entered separately.

**DONE** and **ORDERED** this ____5th____ day of January, 2010.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE